UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BIRCH\|REA PARTNERS, INC., | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 1:18-CV-30-HAB |
| REGENT BANK, et al. | ) |
| Defendants. | ) |
| REGENT BANK, et al. | ) |
| Defendants/Counterclaim Plaintiffs, | ) |
| v. | ) |
| BIRCH\|REA PARTNERS, INC., | ) |
| Plaintiff/Counterclaim Defendant. | ) |

**OPINION AND ORDER**

"It takes 20 years to build a reputation and 5 minutes to ruin it."
–CEO Warren Buffett

Believing that its reputation was tarnished by the Defendants when they filed a federal lawsuit alleging professional negligence, and subsequently voluntarily dismissed it, Plaintiff Birch|Rea Partners, Inc., ("Birch|Rea") filed the instant action invoking this Court's diversity jurisdiction and asserting a state law cause of action for malicious prosecution. Before the Court are a multitude of motions including: Defendants' Motion to Exclude Expert Opinions of Ted Whitmer (ECF No. 138); Defendants' Motion for Summary Judgment as to Damages (ECF No. 139); Plaintiff's Motion for Summary Judgment as to Defendants' Counterclaim (ECF No. 142); Defendants' Motion for Summary Judgment as to Probable Cause and Malice (ECF No. 145);

1

Plaintiff's Motion to Strike (ECF No. 159); and Defendants' Motion to Strike (ECF No. 168).[1] For the following reasons, the Defendants' Motion for Summary Judgment as to Probable Cause and Malice and the Plaintiff's Motion for Summary Judgment on Defendants' Counterclaim will be GRANTED. The Defendants' Motion for Summary Judgment as to Damages, the Defendants' Motion to Strike and the Defendants' Motion to Exclude Ted Whitmer's Testimony will all be DENIED as MOOT. The Plaintiff's Motion to Strike will be DENIED.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting

---

[1] Additionally, the Plaintiff has filed a Motion to Compel Defendants to Retain Local Counsel. (ECF No. 161). Given the disposition of the other motions, this Motion is DENIED as MOOT.

evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

## FACTUAL BACKGROUND

Birch|Rea is a Massachusetts real estate services firm providing comprehensive real estate advisory, consulting, and valuation services to financial institutions, corporations, investors, investment banks, developers, and other organizations throughout the United States.[2] Defendants Stonegate Bank (a Florida corporation) and Home BancShares (an Arkansas corporation) are successors in interest of Defendant Regent Bank (Regent Bank) (collectively referenced herein as "Regent Bank").

The parties present a thorough and lengthy history surrounding the issues in this case, all of which need not be recounted herein. It suffices to say that Birch|Rea initiated this action in direct response to litigation occurring in this Court in Cause No. 1:16-CV-262-TLS-SLC ("the Underlying Action"). In the Underlying Action, Regent Bank alleged that an appraisal report prepared by Birch|Rea ("Birch|Rea Report") for a property located at 100 South Washington Street, Marion, IN 45952 ("the Property") on August 17, 2007, was false and misleading. Regent Bank asserted claims for: professional negligence, negligent misrepresentation, common law/constructive fraud, and breach of contract under a third-party beneficiary theory. A review of the underlying facts follows.

On or around May 16, 2007, Birch|Rea was engaged by SunTrust Bank, a non-party here, to perform a portfolio valuation of certain properties including the subject Property. (Aff. of James

---

[2] https://birchrea.com/about-us

Bruce Ricciuti, ECF No. 158-3, at ¶ 12).[3] The Birch|Rea Report, prepared with a valuation as of May 29, 2007, was used in connection with a SunTrust affiliate's purchase of the Property. PNC Bank ("PNC") provided the financing for the purchase pursuant to a mortgage loan ("the Loan."). (*Id.* at ¶ 14). The Birch|Rea report utilized a capitalization rate of 6.75% and valued the Property using an income approach[4] at $3,230,000. (*Id.* at ¶ 24). Sun Trust and PNC Bank accepted the Birch|Rea report and, on October 19, 2007, the Property sold to Sun Trust's affiliate with a loan in the amount of $2,334,375 extended to Sun Trust by PNC Bank. (Compl. ¶ 24).

On or about December 20, 2010, PNC assigned the Loan to American Capital Group, LLC. Regent Bank, in turn, purchased the Loan from American Capital Group, LLC. Although the facts surrounding its belief are not entirely clear, it appears that at some point Regent Bank determined the Loan to be an underperforming bad loan and that the Property was overvalued. (Compl. ¶¶s 43-46). The Underlying Action then ensued.

### a. *FIRREA, USPAP, and the First Service Appraisal*

Federally regulated banks such as Regent Bank are required by the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) and the Office of the Comptroller of the Currency (OCC) regulations to follow the Uniform Standards of Professional Appraisal Practice (USPAP). USPAP is "the generally recognized ethical and performance standards for the appraisal

---

[3] Regent Bank moved to strike paragraphs 15 and 26 of Ricciuti's Affidavit, asserting that they are not based on his personal knowledge, are speculative and conclusory, and contain hearsay. (ECF No. 169). Because the Court has not relied on either of these paragraphs in its Opinion and Order, the Motion to Strike is DENIED as MOOT.

[4] The income approach "values a property by dividing the net income for a property by an appropriate capitalization rate." (Ricciuti Aff., ¶ 20).

4

profession in the United States."[5] Further, regulated banks are required to review and approve all appraisal reports prior to their use. (Dep. of Charles Argianas, ECF No. 133 at 21, 49, 54).

At the time Regent Bank purchased the Loan, OCC Interagency Appraisal and Evaluation Guidelines (the Guidelines) required a new appraisal or evaluation where there is a substantial passage of time and there have been changes in underlying economic and market assumptions, such as in capitalization rates and lease terms. Under the Guidelines then, when Regent Bank purchased the Loan, it was not entitled to rely on the value estimate in the Birch|REA Report as that report was more than three years old and the United States was in the midst of a significant economic downturn. (Dep. of David Mazza[6], ECF No. 158-8 at 41; Argianas Dep. at 161-163).

For this reason (and perhaps others), Regent Bank engaged another appraiser, First Service PGP Valuation ("First Service") to value the Property prior to its purchase of the Loan in 2010. (Mazza Tr. at 47). First Service valued the property as of December 14, 2010, at $2,910,000. On December 29, 2010, B & T Real Estate Consultants (B & T) reviewed the First Service Report on behalf of Regent Bank and accepted the report. (ECF No. 158 at ¶ 32).

### b. Regent Bank's Pre-Suit Investigation and the John Potter Reports.

In February 2016, after Regent Bank acquired the Loan and prior to its commencement of the Underlying Action, Regent Bank began questioning the valuation of the Property. Regent Bank consulted with independent appraisal experts and reviewed "appraisal authorities and regulations, and consultations between and among bank officers as to impropriety and negligence of the Birch|REA 2007 appraisal." (Affidavit of Doug Green, ECF No. 136, at ¶ 8).[7]  Regent Bank

---

[5] https://www.appraisalfoundation.org/imis/taf/standards/q_as/taf/qas.aspx

[6] David Mazza is Regent Bank's former Executive Vice President.

[7] Birch|Rea has moved to strike Green's affidavit asserting that he was not properly disclosed as a witness in discovery and that his affidavit is not based upon personal knowledge. (ECF No. 159). Regent Bank

5

requested appraisals of the Property from certified property appraisers, Jay Allardt, SRA and Ann Elizabeth Gilbert, MAI. (*Id.* at ¶ 9). These appraisers determined that the "as-is" or "go-dark" value of the Property was 200,000.00. (*Id.* at 9) (the 2016 Appraisals). Upon receiving this news, Regent Bank hired counsel to explore possible legal action against Birch|REA for its initial appraisal in 2007. (*Id.* at 10).

To that end, in March 2016, Regent Bank hired the law firm of SAAVEDRA|GOODWIN along with the Indiana law firm of Rothberg Logan and Warsco to undertake joint legal representation for the bank. (Affidavit of Andrew Wyman, Esq., ECF No. 144, at ¶ 4).[8] In April 2016, Regent Bank and its counsel, hired certified appraiser John Potter, MAI (Potter), to conduct three separate independent appraisal reviews including reviews of the Birch|REA Report, the First

---

responds by noting that Green is acting as Regent Bank's corporate representative as the prior corporate representative, Dawn Calder, is no longer employed by Regent Bank. Regent Bank further notes that it disclosed its corporate representative in its initial disclosures and, while Green is replacing Dawn Calder as the corporate representative, the substance of the testimony offered by Green has not changed. Regent Bank further cites authorities holding that it is permissible to substitute a Rule 30(b)(6) witness if a previously identified Rule 30(b)(6) witness left the company. *See Coach Inc. v. Visitors Flea Market, LLC,* 2014 WL 2612036 at *2 (M.D. Fla. 2014)("as a general proposition, a corporation should not be prohibited from calling a designated representative as a witness simply because the person it thought was going to testify leaves its employ."). Further, to the extent Birch|Rea is objecting to the basis of Green's personal knowledge, such knowledge is presumed on the basis of his designation as a corporate representative. *See ABN Amro Mortg. Group, Inc. v. Maximum Mortg., Inc.,* 2006 WL 2598034 at *7 (N.D. Ind. Sept. 8, 2006). The Motion to Strike Green's Affidavit is DENIED.

[8]Birch|Rea has moved to strike Wyman's Affidavit (ECF No. 159) asserting that he was not disclosed as a trial witness during discovery and that his testimony is self-serving. Regent Bank acknowledges that it did not disclose Wyman but argues that Rule 56(e) does not require that affiants be listed as trial witness and courts have refused to impose such a requirement. *See* ECF No. 170 at 4 (listing cases); *Paolello v. Marco*, 1997 WL 280654 at *3 (N.D. Ill. May 22, 1997) (holding that Rule 56(e) does not require striking affidavit of individuals not on the list of potential trial witnesses). Further, "[t]he Seventh Circuit has emphasized time and again that so-called 'self-serving' sworn testimony is competent evidence at summary judgment that *must* be considered by the Court. *Warren v. Corizon Inc.,* 2017 WL 5290577, at *4 (S.D. Ind. Nov. 13, 2017) (citing *McKinney v. Office of Sheriff of Whitley Cnty.*, 866 F.3d 803, 814 (7th Cir. 2017) ("Our cases for at least the past fifteen years teach that [s]elf-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment.") (citation and quotation marks omitted). Thus, the Motion to Strike has no merit and is DENIED.

Service Report, and the 2016 Appraisals. (Green Aff. ¶ 11). Potter submitted his reports (hereafter Potter Reports One through Three) to Regent Bank on April 26, 2016. With respect to the Birch|REA Report, Potter Report One found it deficient in nine difference aspects, including:

1. Over-reliance on a non-market leaseback sale;

2. No comparisons or adjustments for the sale/income approach per each comparable. Rather a broad over-generalized viewpoint;

3. Mis-use of the GIM (Gross Income Multiplier) in the sales comparison approach creating a circular analysis in relation to the income approach. The approaches are intended to be separate and independent for better indication of market value;

4. Failure to adequately segment size with sale and income approaches;

5. Discrepancy with building description reporting a safe vault and lockboxes on page three yet no reference within the on-site inspection and how that may or may not affect value;

6. Lack of verification of sale and income comparables per inspection or other sources. Rather an all encompassing opinion of bank sales in general rather than specifically for Marion, Indiana.

7. Lack of adequately reporting property history of the subject that sold in 2004 for $495,000 then rendering opinion of value three years later in 2007 for a significantly higher value of $3,230,000 representing annual appreciation of approximately 184% per year;

8. Disregarding obvious market conditions of a declining population and significant losses of manufacturing companies that support the Marion market;

9. Misrepresenting the sale as a market sale causing the subject taxes to be extremely inflated.

(ECF No. 145-1 at 3). The Report then reaches the conclusion that, "[o]verall, the appraiser finds this report in non-compliance with USPAP and breached their duty of care by failing to apply proper methods used to appraise the subject property as set forth herein." (*Id.*).

### *c. Commencement and Dismissal of the Underlying Action*

With Potter Report One in hand, counsel for Regent Bank believed the Underlying Action was properly supported as Potter was a licensed and certified Indiana General Real Estate appraiser. (Wyman Aff. ¶¶ 7-8). Wyman avers that he maintained a good faith belief that Potter Report One was a "proper predicate to base [the] allegation in the Underlying Action that the Birch|Rea Report was false and misleading." (*Id.* at ¶10).

Still, prior to commencing suit, Regent Bank sent Birch|Rea a copy of a proposed complaint relating to its purported reliance on the Birch|Rea Report in connection with its 2010 purchase of the Loan. Birch|Rea responded with its belief that the complaint was frivolous and that it would pursue remedies against Regent Bank if it pursued the purportedly frivolous suit. Despite this back and forth, Regent Bank initiated the Underlying Action alleging that the Birch|Rea Report contained material misrepresentations and inaccuracies as to the value of the Property causing loss to Regent Bank when it purchased the Loan. Additionally, Regent Bank asserted that the Birch|Rea Report failed to comply with USPAP and disregarded obvious market conditions for the Property.

On September 26, 2017, Regent Bank filed a Motion for Voluntary Dismiss in the Original action requesting the Court to enter an order of dismissal. (*See* 1-16-CV-262-TL-SLC, ECF No. 32). In that motion, signed solely by Regent Bank's counsel, Regent Bank stated that it "has elected to voluntarily dismiss its cause of action against Defendant Birch REA Partners, Inc., with prejudice and with each party bearing its own attorney fees and costs." (*Id.* at ¶ 1). The motion further represented that "Birch REA Partners, Inc. does not object to this Motion to Dismiss." (*Id.* at ¶ 2). On October 23, 2017, after the time for any objection had passed, the Court entered an Opinion and Order pursuant to Fed.R.Civ.P. 41(a)(2) wherein it granted the Motion for Voluntary Dismissal and "DISMISSES WITH PREJUDICE the Plaintiff's claims against the Defendant."

(*Id.*, ECF No. 33 at 2). Despite the request in the Motion, the Opinion and Order is silent as to whether the parties are to bear their own attorney fees and costs.[9]

Subsequent to this dismissal, Birch|Rea commenced the present suit asserting a state law claim of malicious prosecution against Regent Bank for its initiation of the Underlying Action. Birch|REA seeks reputational damages it contends it suffered in the form of lost business after Regent Bank filed the Underlying Action and also asserts its entitlement to recover attorney fees for having to defend the Underlying Action. Regent Bank has counterclaimed in this suit for its attorneys' fees related to this suit. The Court turns now to the pending motions.

## DISCUSSION

As set forth at the outset, the parties have filed a medley of summary judgment motions and motions to strike directed at various components of the case. Because the Court ultimately concludes that Defendant's Motion for Summary Judgment as to Probable Cause and Malice is determinative of Birch|Rea's claim, the Court focuses primarily on this motion.

### a. Defendant's Motion for Summary Judgment as to Probable Cause

Regent Bank asserts that Birch|Rea has not raised a genuine issue of material fact as to its claim for malicious prosecution. The hallmark of malicious prosecution rests on the notion that the plaintiff has been improperly subjected to legal process. *See City of New Haven v. Reichhart,* 748 N.E.2d 374, 378 (Ind. 2001). However, the tort of malicious prosecution "is not generally favored" and thus, "its requirements are construed strictly against the party bringing the action." *Wong v. Tabor*, 422 N.E.2d 1279, 1283 (Ind. Ct. App. 1981). Under Indiana law, the elements of a

---

[9] Regent Bank asserts that the decision to voluntarily dismiss the Underlying Action had nothing to do with the merits of the case and was made based upon a business judgment that Birch|REA did not have malpractice insurance or errors and omissions insurance coverage. (Green Aff. ¶ 20). Additionally, Regent Bank filed a motion for summary judgment on the issue of whether Birch|Rea could seek attorney fees for the prior suit in light of the court's dismissal order. Given this court's disposition of the other summary judgment motions, it need not resolve this issue.

malicious prosecution claim are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action, and (4) the original action was terminated in the plaintiff's favor. *Crosson v. Berry,* 829 N.E.2d 184, 189 (Ind.Ct.App. 2005). At issue in Regent Bank's motion are whether material facts exist related to elements two and three so as to warrant a trial.

With respect to these elements, Regent Bank argues that it is undisputed that it had probable cause to institute the Underlying Action and that it did not act with the type of malice required in malicious prosecution claims. In support of its argument, Regent Bank points to Potter Report One and asserts that it relied upon that report and its conclusions that the Birch|Rea Report was flawed and not in compliance with USPAP, when it initiated the Underlying Action. Regent Bank goes on to highlight portions of Potter's deposition (ECF No. 132) wherein Potter affirms the conclusions in his report along with the affidavit testimony of its own attorney to defend its decision to bring the action.

In response, Birch|Rea contends that, in essence, this argument puts the cart before the horse. According to Birch|Rea, Regent Bank should have known from the face of the initial appraisal—which reflects that it was prepared for use by SunTrust, as well as the relevant USPAP and OCC Interagency Appraisal & Evaluation Guidelines—that it was never entitled to rely on Birch|Rea's appraisal when purchasing the mortgage loan. Further, Birch|Rea contends that Regent Bank was in possession of a later appraisal prepared by First Service, which Regent Bank relied on instead of Birch|Rea's appraisal when purchasing the mortgage loan.  Thus, according to Birch|Rea, Regent Bank never actually relied on its report and thus, should have been aware that its claims in the Underlying Action (that it did so) were baseless. (*Id.*).[10]

---

[10] Further buttressing this argument, according to Birch|Rea, is the testimony of its expert, Ted Whitmer (Whitmer), which Regent Bank has moved to exclude (ECF No. 138). Whitmer offers two primary

The existence of probable cause is an absolute defense to a malicious prosecution claim. Probable cause exists "when a reasonably intelligent and prudent person would be induced to act as did the person who is charged with the burden of having probable cause." *Ingram v. Diamond Equipment, Inc.,* 118 N.E.3d 1, 8 (Ind. Ct. App. 2018) (quoting *Reichhart*, 748 N.E.2d at 379). More simply stated, the inquiry is whether the defendant acted reasonably in believing the plaintiff was somehow responsible for the tortious actions. *See Satz v. Koplow*, 397 N.E.2d 1082, 1085 (Ind. Ct. App. 1979). "The determination of probable cause is normally an issue of fact for the jury's determination." *Exec. Builders, Inc. v. Trisler*, 741 N.E.2d 351, 357 (Ind. Ct. App. 2000). However, if the facts relied upon are uncontroverted, the question of probable cause is a question of law for the court. *Id.*

Here, the designated evidence from the parties leaves little question but that Regent Bank had probable cause and acted reasonably in filing the Underlying Action. The uncontroverted evidence is that Regent Bank had before it Potter Report One which identified nine alleged deficiencies in the Birch|Rea appraisal and ultimately concluded that the Birch|Rea Report failed to "apply proper methods" and "breached their duty of care." (ECF No. 145-1 at 3). Indeed, this is precisely what Regent Bank said in the Underlying Action. *See* 1:16-CV-262-TLS-SLC, ECF No. 1 at ¶22 (listing the nine deficiencies set forth in Potter Report One).

Nevertheless, Birch|Rea emphasizes that Regent Bank could not have a reasonable belief that it was entitled to rely on the Birch|Rea report. Even accepting the facts Birch|REA provides

---

opinions to which Regent Bank objects. First, he opines that Regent Bank did not have probable cause to file its complaint against Birch|Rea in the Underlying Action. Second, he concludes that Regent Bank could not have properly relied upon the Birch|Rea Report based on FIRREA regulations. However, in this Court's view, these arguments are mere extensions of the defenses that Birch|REA could have presented in the Underlying Action. Thus, at this point, even if accepted by the Court, they do little to call into question the undisputed evidence by Regent Bank that it based the Underlying Action on Potter Report One.  Accordingly, the Motion to Exclude Whitmer's testimony (ECF No. 138) is DENIED as MOOT

to support this argument, they do nothing to alter the undisputed fact that Regent Bank based its Underlying Action on Potter Report One. At most, what Birch|Rea has succeeded in doing is providing defenses to that litigation by asserting that (1) Regent Bank did not actually rely on the Birch|Rea Report; (2) it was not entitled to rely on it under the various standards and regulations; and (3) even if it did rely on it, it was outdated. What Birch|Rea has failed altogether to do is produce any evidence that Regent Bank did not rely on Potter Report One as at least one basis for the Underlying Action. And, that is all the law requires of Regent Bank.

If that were not enough, there is a complete absence of any evidence as to malice. "Malice 'in fact' must be shown here; malice 'in law' such as is required in defamation actions is not sufficient." *Satz*, 397 N.E.2d at 1085 (quoting PROSSER TORTS (4th ed. 1971)). "Malice may be inferred from a total lack of probable cause or from failure to make reasonable or suitable inquiry." *Board of Com'rs of Hendricks County v. King*, 481 N.E.2d 1327, 1329 (Ind. Ct. App. 1985). But here, there is simply no evidence produced by Birch|Rea to demonstrate that Regent Bank failed to make a reasonable or suitable inquiry into the facts to support the Underlying Action. Indeed, it hired a certified appraiser who produced a 28-page analysis of the Birch|Rea Report finding it deficient. Further, even if the Court credited some of Birch|Rea's expert's contentions or its other evidence that Regent Bank was not entitled to rely on the Birch|Rea Report or Potter Report One, there remains an element of culpability that has not been shown here. Indeed, even if the Court could conclude from the evidence that Regent Bank failed to make a "suitable and reasonable inquiry into the facts underlying the original action[, that] is not enough in itself to sustain an action for malicious prosecution." *Mirka v. Fairfield of Am., Inc.*, 627 N.E.2d 449, 451-452 (Ind. Ct. App. 1994). The failure "must be culpable, that is, malice that rises above the level of mere negligence." *Id.*; see also, *Ingram v. Diamond Equip., Inc.*, 118 N.E.3d 1, 8 (Ind. Ct. App.

2018). Here, at most, Regent Bank *may* (and the Court emphasizes may) have been mistaken, wrong in its conclusions, or negligent. That is not enough.

In sum, even construing the evidence in a light most favorable to Birch|Rea, the undisputed material evidence satisfied Regent Bank's burden of proving the absence of a question of material fact as to any intended malicious prosecution. Regent Bank's Motion for Summary Judgment on the issues of probable cause and malice (ECF No. 145) is, therefore, GRANTED.

**b. Plaintiff's Motion for Summary Judgment on Counterclaim**

This leaves Regent Bank's counterclaim under Indiana's frivolous litigation statute, Ind. Code §34-52-1-1, asserting that it is entitled to attorney's fees for frivolous, unreasonable, or groundless litigation. Birch|Rea has moved for summary judgment asserting that under the doctrine espoused in *Erie Railroad v. Tomkins,* 304 U.S. 64 (1938), this statute is inapplicable in federal court.

District courts in this division have addressed the use of this statute in other cases and have, at least twice, determined that it is not binding on the Court under *Erie. Cintas Corp. v. Jupiter Aluminum Corp.,* No. 2:20-CV-160-PPS/JPK, 2020 WL 4584298, at *3 (N.D. Ind. Aug. 10, 2020) ("Indiana's frivolous litigation statute is 'procedural because it allows for the award of fees based upon the conduct of the parties and the attorneys in filing and litigating the claim, rather than on a claim's underlying merits.'") (quoting *Williams v. State Farm Ins. Co.*, 2011 WL 2111988, at *2 (N.D. Ind. 2011). Thus, in both *Cintas* and *Williams*, the court concluded that Ind. Code § 34-52-1-1 is inapplicable in federal court and cannot provide a basis for the recovery of attorney's fees.

Regent Bank asks the Court to overlook the above cases and find that there exists a substantive component to the statute that the Court may consider. Having reviewed the parties' briefs and arguments on the issue, the Court sees no reason to depart from the sound reasoning of

this court's colleagues. The Plaintiff's Motion for Summary Judgment regarding the Defendants' counterclaim (ECF No. 142) is, therefore, GRANTED.

## **CONCLUSION**

There is clearly no love lost among the parties in this case as they have been embroiled in litigation over an appraisal from 2007 for the last half-decade. It is time to put this case to bed as this case has consumed not only the parties time and efforts but also this Court's resource – twice. The Court remains hopeful the resolution of the present motions shall assist the parties in moving forward. Based on the foregoing:

(1) The Defendants' Motion for Summary Judgment as to Probable Cause and Malice is GRANTED (ECF No. 145);

(2) The Plaintiff's Motion for Summary Judgment on Defendants' Counterclaim is GRANTED (ECF No. 142);

(3) The Defendants' Motion for Summary Judgment as to Damages is DENIED as MOOT (ECF No. 139);

(4) The Defendants' Motion to Strike and the Defendants' Motion to Exclude Ted Whitmer's Testimony are DENIED as MOOT (ECF Nos. 138, 168);

(5) The Plaintiff's Motion to Strike is DENIED (ECF No. 159);

(6) The Plaintiff's Motion to Compel Defendants to Retain Local Counsel (ECF No. 161) is DENIED as MOOT.

The Clerk is DIRECTED to enter judgment in favor of the Defendants on the Plaintiff's Complaint and in favor of the Plaintiff on the Defendants' Counterclaim.

SO ORDERED on June 15, 2021.

s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT